IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO.   17-35044-H2-7 |
| ROBERT DAVIS | § | |
| | § | |
| DEBTOR | § | |

### MOTION TO HAVE GWENDOLYN WILDS AND GRACE DAVIS APPEAR AND SHOW CAUSE WHY THEY SHOULD NOT BE SANCTIONED

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

TO THE HONORABLE U. S. BANKRUPTCY JUDGE:

Robert Davis ("Debtor"), moves the court to have Gwendolyn R. Wilds and Grace Davis, appear and show cause why they should not be sanctioned for engaging in the unauthorized practice of law, for violating 11 U.S.C. §526, Rule 2017, and 12 U.S.C. § 5538 and its implementing regulation, the Mortgage Assistance Relief Services Rule ("MARS Rule").

### SUMMARY OF FACTS AND RELIEF REQUESTED

The Debtor hired Gwendolyn R. Wilds and Grace Davis to modify his home loan and to file a Chapter 13 bankruptcy case. The Debtor paid nearly $9,000.00 toward monthly loan modification trial payments that Wilds and Davis kept for themselves and never forwarded to

Ocwen. The Debtor also paid Wilds an additional $3,705.00 in legal fees, yet Wilds wholly failed to perform and fulfill her obligations to the Debtor. In addition, Wilds took the Debtor's $310.00 filing fee and never forwarded it to the Clerk of the Court. Instead, Wilds filed an *Application to Pay Filing Fee in Installments* and kept the Debtor's filing fee for herself.

A review of PACER shows that this may be a pattern and practice for Wilds who is not licensed to practice law in Texas. Forty-six of the fifty Chapter 13 cases that have been filed by Wilds in the Southern District of Texas have been dismissed, and none of her Chapter 13 clients have received a discharge.

The Debtor asks this Court to order Gwendolyn R. Wilds and Grace Davis to appear and show cause why they should not be sanctioned for engaging in the unauthorized practice of law, for violating 11 U.S.C. §526, Rule 2017, and the MARS Rule.

## FACTS
### RELATIONSHIP BETWEEN WILDS AND DAVIS

1. Gwendolyn Wilds and Grace Davis ("Wilds and Davis") share an office located at 3920 FM 1960, Suite 200, Houston, Texas 77068.
2. Wilds and Davis work together and jointly offer their combined services to consumers who are in need of credit repair and bankruptcy. Together, Wilds and Davis, provide their clients with advice and services related to credit repair, home loan modifications, state exemptions, and bankruptcy.
3. Davis is <u>not</u> an attorney and uses a d/b/a called *Credit with Grace.*
4. Wilds is an attorney, but is <u>not</u> licensed in Texas.
5. A PACER search indicates that Wilds has filed a total of fifty Chapter 13 cases in the Southern District of Texas. A review of the 50 cases shows the following:
    i. 46 of the 50 Chapter 13 cases filed by Wilds have been dismissed;
    ii. 39 of the 50 Chapter 13 cases filed by Wilds were denied confirmation; and
    iii. None of Wilds' clients have received a Chapter 13 discharge. However, four cases are currently pending.
(See Attached Exhibit A – *Spreadsheet of all Chapter 13 Cases filed by Wilds.*)

### DEBTOR HIRED WILDS AND DAVIS

6. Grace Davis advertised her "credit repair" services at a local used car dealership by leaving business cards at the front desk.

7. Robert Davis (the "Debtor") picked up one of these business cards and subsequently scheduled an appointment with the hopes of increasing his credit score.

8. Davis met with Wilds and Davis at their office where he was advised to i) Modify his home loan with Ocwen Loan Servicing ("Ocwen"); and (ii) File a Chapter 13 bankruptcy.

**LOAN MODIFICATION SERVICES**

9. Both Wilds and Davis advised and encouraged the Debtor to modify his home loan with Ocwen (the "Modification").

10. On June 18, 2016, the Debtor executed a $750.00 Flat Fee Agreement for the Modification. *See Exhibit B*

11. On June 18, 2016, the Debtor paid $400.00 as an upfront fee for the Modification.

12. Wilds and Davis explained that the Debtor would be required to make monthly trial payments toward the Modification before Ocwen would approve the Modification.

13. The Debtor was instructed to make the payments payable to "Credit with Grace", not Ocwen.

14. From June 18, 2016 through August 11, 2017, the Debtor made a total of thirteen payments, totaling $8,906.00. All thirteen payments were hand delivered to either Wilds or Davis who provided the Debtor with receipts for payment. *See Exhibit C*

15. Nine months after the Debtor had already been making payments toward the Modification, Wilds and Davis instructed the Debtor to send two letters to Ocwen:
    a. The first letter to Ocwen requested a loan modification. *See Exhibit D*
    b. The second letter to Ocwen authorized both Wilds and Davis to be the sole point of contact regarding the Debtor's Modification. *See Exhibit E*

**MORTGAGE ASSISTANCE RELIEF SERVICES RULE ("MARS RULE")**

16. 12 U.S.C. § 5538, and its implementing regulation, the MARS Rule, makes it illegal for companies to charge upfront fees for loan modification services unless the company delivers, and the customer agrees to, a written offer of mortgage relief from the customer's lender or servicer.

17. Here, Wilds and Davis violated the MARS Rule by taking upfront fees from the Debtor prior to any agreement being reached with Ocwen.

**TWO CHAPTER 13 CASES FILED BY WILDS**

18. On December 27, 2016, the Debtor and Wilds executed a retainer agreement for a Chapter 13 bankruptcy. *See Exhibit F*

19. On December 28, 2016, the Debtor gave Wilds $400.00 toward the bankruptcy retainer and Wilds filed his Chapter 13 bankruptcy case (Case No. 16-36562) ("First Bankruptcy Case").  *See Exhibit F*

20. Post-petition, the Debtor paid Wilds an additional $1,805.00 toward the First Bankruptcy Case retainer.

21. Subsequently, the Chapter 13 Trustee objected to confirmation and filed a Motion to Dismiss the Debtor's First Bankruptcy case.  Instead of filing a Motion to Modify to cure deficiencies, Wilds advised the Debtor to file a second bankruptcy case when it was evident that the First Bankruptcy Case was going to be dismissed.

22. On July 28, 2017, before the First Bankruptcy case was dismissed, the Debtor paid Wilds $1,000.00 as a retainer for the subsequent Chapter 13 case.

23. On August 7, 2017, the First Bankruptcy Case was dismissed.

24. On August 11, 2017, the Debtor executed a Fee Agreement with Wilds for a new Chapter 13 filing.  *See Exhibit G*

25. On August 21, 2017, Wilds filed a second Chapter 13 Case for the Debtor (Case No. 17-35044) ("Second Case").

26. On August 22, 2017, the Debtor paid Wilds an additional $500.00 toward the retainer and a separate payment of $310.00 for the filing fee for the Second Case.
    *(See Attached Exhibit H – All payments Debtor made to Wilds for both bankruptcy cases)*

27. Wilds never paid the $310.00 filing fee that she received from the Debtor.  Instead, Wilds kept the $310.00 and filed an *Application to Pay Filing Fees in Installments*.

28. The Debtor was forced to pay the filing fee (for a second time) directly to the Clerk's office.

29. On September 6, 2017, the Debtor's case was dismissed for deficiencies because Wilds failed to file a mailing matrix.

30. Subsequently, the Debtor hired new bankruptcy counsel, Kyle Payne, to take over the Second Case. The Debtor paid Payne $1,000.00 in attorney's fees and agreed to a fixed fee of $3,825.00 for representation in the Second Case.

31. Subsequently, the Court vacated the Dismissal Order, the Debtor's Chapter 13 plan was confirmed, and the Debtor completed all of his payments pursuant to his Chapter 13 plan.

## WILDS AND DAVIS' SCHEME WAS REVEALED

32. As soon as the Debtor employed new counsel, he learned that he had been deceived by Wilds and Davis.

33. Not only did Wilds and Davis never modify the Debtor's loan with Ocwen, but Wilds and Davis never sent any money to Ocwen, keeping the $8,906.00 they took from the Debtor.
34. Kyle Payne made multiple attempts to recover the funds owed to the Debtor. *See Exhibit I*
35. The Debtor subsequently employed Walker & Patterson, P.C. to recover the money owed to him by Wilds and Payne. The Debtor has incurred significant attorney's fees and costs and seeks recovery of these damages as well.
36. The undersigned counsel made numerous attempts to resolve all pending matters without the need for court intervention.
37. On December 1, 2019, Wilds asserted that the funds would not be returned to the Debtor until the Debtor executed a release. *See Exhibit J*
38. Wilds' actions, including her demands for a release, constitute unethical behavior that are a violation of the Texas Disciplinary Rules of Professional Conduct and provide grounds for disciplinary action by the Court. The Debtor requests that the Court determine whether disciplinary action is appropriate in this case.

## RULE 2017

39. Pursuant to Rule 2017, the Court may determine whether any payment of money by the debtor made directly to an attorney is excessive.
40. Here, the Debtor asks this Court to make a determination that the fees received by Wilds for bankruptcy was excessive.
41. As described above, Wilds wholly failed to fulfill her obligations.
42. The Debtor's first bankruptcy case was dismissed when it could have easily been modified to bring the Debtor current.
43. Wilds never filed bankruptcy schedules in the Second Case.
44. Wilds never filed a Chapter 13 Plan in the Second Case.
45. Wilds never filed a *Motion to Extend the Automatic Stay* in the Second Case.

## CHART SUMMARIZING PAYMENTS/ACTIVITY IN THE TWO CASES

46. Below is a summary of the events described above:

| PAYMENT DATE | AMOUNT OF PAYMENT | DESCRIPTION OF PAYMENT |
|---|---|---|
| 6-18-2016 | $400.00 | Loan Modification |

| | | |
|---|---|---|
| 7-1-2016 | $900.00 | Loan Modification |
| 7-28-2016 | $373.00 | Loan Modification |
| 8-9-2016 | $875.00 | Loan Modification |
| 9-12-2016 | $872.00 | Loan Modification |
| 10-7-2016 | $910.00 | Loan Modification |
| **12-27-2016**: Debtor executed two fee agreements: (1) Retainer agreement with Wilds for a Chapter 13; and (ii) Loan Modification agreement with Davis. | | |
| 12-28-2016 | $400.00 | Bankruptcy Fees |
| **12-28-2016**: First Chapter 13 Case Filed (Case No. 16-36562) | | |
| 1-10-2017 | $550.00 | Bankruptcy Fees |
| 2-2-2017 | $290.00 | Loan Modification |
| 2-10-2017 | $78.00 | Bankruptcy filing fee (to Clerk) |
| 2-11-2017 | $200.00 | Bankruptcy Fees |
| 2-28-2017 | $430.00 | Loan Modification |
| 03-01-2017 | $248.00 | Loan Modification |
| 03-01-2017 | $350.00 | Bankruptcy Fees |
| **03-09-2017**: Wilds and Davis instructed the Debtor to send a letter to Ocwen requesting a loan modification and authorizing both Wilds and Davis to be the <u>sole</u> point of contact. | | |
| 03-12-2017 | $696.00 | Loan Modification |
| 3-12-2017 | $550.00 | Bankruptcy Fees |
| 3-31-2017 | $692.00 | Loan Modification |
| 3-31-2017 | $155.00 | Bankruptcy Fees |

| | | |
|---|---|---|
| 4-28-2017 | $980.00 | Loan Modification |
| 7-28-2017 | $1,000.00 | Bankruptcy Fees (for Second Case) |
| **8-07-2017**: First Bankruptcy Case Dismissed <br> **8-11-2017**: Debtor signed Fee Agreement for 2nd Bankruptcy Case. | | |
| 8-11-2017 | $970.00 | Loan Modification |
| **8-21-2017**: Wilds filed Second Chapter 13 Case for the Debtor | | |
| 8-22-2017 | $310.00 | Bankruptcy FILING FEE |
| 8-22-2017 | $500.00 | Bankruptcy Fee |
| **9-06-2017**: Second Case Dismissed for deficiencies. Debtor hired Payne. | | |

**Total Paid by Debtor toward Bankruptcy Fees:**     $4,015.00
**Total Paid by Debtor toward Loan Modification:**     $8,636.00

### SUMMARY

In addition to seeking recovery of $12,651.00 the Debtor gave to Wilds and Davis, the Debtor also seeks recovery of attorney's fees and costs that he incurred attempting to 1) recover his money from Wilds and Davis; and 2) employ new bankruptcy counsel.

The Debtor respectfully requests the court to require Wilds and Davis to appear and show cause why they should not be reported to the State Bar, sanctioned for the unauthorized practice of law, for violating 11 U.S.C. §526, and for violating the MARS Rule, and to grant him such other and further relief to which he may show himself entitled.

Dated: December 19, 2019

Respectfully submitted,

By: /s/ Miriam Goott
Miriam Goott
attorney-in-charge

                 SBN 24048846
                 COUNSEL FOR THE DEBTOR

OF COUNSEL:
WALKER & PATTERSON, P.C.
P.O. Box 61301
Houston, TX 77208
(713) 956-5577 (telephone)
(713) 957-3358 (fax)
mgoott@walkerandpatterson.com

## CERTIFICATE OF SERVICE

  I, Miriam Goott, hereby certify that a copy of the Motion was served on the Gwendolyn Wilds, Grace Davis, William Heitkamp, David Peake, and Diane Livingstone on December 19, 2019.

               By: */s/ Miriam Goott*
                 Miriam Goott