## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON, DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 17-35044-H2-7** |
| **ROBERT DAVIS** | § | |
| | § | |
| **DEBTOR** | § | |

## RESPONSE TO MOTION TO HAVE GWENDOLYN WILDS AND GRACE DAVIS APPEAR AND SHOW CAUSE WHY THEY SHOULD NOT BE SANCTIONED

**TO THE HONORABLE U.S. BANKRUPTCY JUDGE**:

Gwendolyn R. Wilds in response to the above-referenced motion responds and states as follows:

1. That the Debtor retained the undersigned to refile a Chapter 13 petition shortly before Hurricane Harvey;

2. That when the undersigned returned to the office days later the undersigned emailed the Debtor to pay his filing fee;

3. That the Debtor terminated the undersigned's representation without explanation;

4. The undersigned immediately reached out by telephone and email to the Debtor for an explanation and for the additional information needed to satisfy the remaining deficiencies to avoid dismissal but the Debtor did not respond;

5.  Shortly thereafter  the Debtor retained substitute counsel;

6. That while in Court, months later the Debtor represented to this Court that he paid the filing fee to the undersigned;

1

7.  That the undersigned approached counsel for the Debtor for an explanation and instead was asked if Mr. Payne spoke to her regarding the matter;

8.  That although Mr. Payne had not contacted the undersigned until months later, the undersigned did not realize the filing fee had been left at the office until Mr. Payne forwarded a copy of a receipt signed by an employee of Credit with Grace;

9.  In response, the undersigned promptly responded and provided an accounting and expressed her willingness to refund the unused retainer;

10. That the undersigned waited for a response from Mr. Payne regarding the accounting but he never did;

11. That on or about July 11, 2019, the undersigned received an email from another law office alleging that my office owed $13,000 to the Debtor for moneys that were not paid to his mortgage loan servicer;

12. That in response, the undersigned inquired whether Counsel for the Debtor received the undersigned's response to Mr. Payne's inquiry.  The undersigned reiterated her willingness to refund  the unused portion of the retainer;

13. Despite several emails from the Walker Law Office, Counsel for the debtor never acknowledged the invoice and the proposed refund amount.

14.  It became clear, after the series of emails that counsel for Debtor did not intend to respond and that counsel mistakenly assumed and believed that the undersigned also retained funds which were paid towards the loan modification.  It was at that point the undersigned raised the issue of a release in satisfaction of the refund.

2

**FACTS**

1.  The undersigned rented an office from Credit with Grace at the time Mr. Davis initially came to the office.

2.  The Debtor initially came to the offices at 3920 FM 1960 to seek a loan modification.

3.  On the day Mr. Davis initially came to the office, Ms. Davis had not arrived.  The undersigned greeted Mr. Davis and engaged in small talk until she arrived.

4.  That at that time, Mr. Davis was interested in modifying his home loan.

5.  That months later, Mr. Davis returned to the office to see Ms. Davis as his employment situation worsened and he was deeply troubled because he was about to lose his vehicle.

6.  Mr. Davis was desperate and the undersigned was approached at that time to file for Chapter 13 protection.


**BANKRUPTCY CASES**

Counsel for the Debtor alleges that Mr. Davis hired the undersigned at the same time he sought loan modification services.  Mr. Davis sought the loan modification services of Credit with Grace in June of 2016. Mr. Davis did not approach the undersigned to file a Chapter 13 petition until the end of December 2016 when his car was about to be repossessed.

Prior to being admitted to the Bankruptcy Court, the undersigned was a credit consultant with Credit with Grace and was familiar with many of the credit procedures and often met with clients.  It was not unusual for Ms. Davis to request the undersigned to witness documents or be present often for safety reasons and/or make copies for customers.   As is customary when Debtors are in bankruptcy, counsel for the Debtor must authorize the mortgage company to work with a third party.   Hence the letter dated March 9, 2017.

It is well settled that less that 33% of all Chapter 13 cases are discharged. According to the American Bankruptcy Institute predicting success in Chapter 13 cases is less certain than predicting failure. *Success Rates in Chapter 13 Cases,* American Bankruptcy Institute (August 2017).   Since only one Debtor among the 50 cases cited by the Debtor's counsel has completed their plan, the Debtor's reference to the confirmation rate of the undersigned's cases filed with this court is simply disingenuous, and does not warrant further discussion.

**THE FIRST CASE**

The Debtor was unemployed at the time he approached the undersigned to file for Chapter 13 protection.  Unable to pay the entire fee, he asked the undersigned to take a partial retainer.   Mr. Davis paid the balance of the retainer and the filing fee post-petition.  The Trustee objected to confirmation because the Debtor failed to make its payments to the trustee.  At that time, Mr. Davis indicated that he did not want to pay the total amount in arrears prior to confirmation because he recently started a new job and needed to pay some bills as he was the only one working at that time.

**THE SECOND CASE**

Mr. Davis was told that he could always start over.  He agreed and the first case was dismissed.  When he came ashore he paid a new retainer toward the second case which was promptly filed.  Shortly thereafter, Hurricane Harvey occurred. The undersigned did not learn until much later that a day or so after Hurricane Harvey, while the undersigned was not in the office, the Debtor appeared at the office and paid the filing fee.  An employee of Credit with Grace apparently provided him with a receipt for the filing fee but failed to inform the undersigned.  When the undersigned returned to the office, she contacted the Debtor regarding

4

the filing fee.  Almost immediately, the Debtor sent an email terminating her services without explanation.  Because Mr. Davis did not respond to the undersigned's subsequent emails and calls regarding information needed for the second bankruptcy, and because he obtained new counsel, no further documents were filed.

**RECENT DEVELOPMENTS**

The funds paid by Mr. Davis for the bankruptcies are not in dispute.   However, Mr. Payne after his initial email did not respond after the undersigned acknowledged that her willingness to issue a refund.   Instead, the undersigned received an email from the firm of Walker & Patterson demanding a refund in the amount of $13,000 without an explanation or breakdown of the demand.  The undersigned promptly responded inquiring whether she received a copy of the invoice and response sent to Mr. Payne.

The undersigned did not receive a response acknowledging the invoice nor the proposed refund until this motion was filed, nor was the undersigned given the courtesy of a simple phone call to discuss and settle the matter.  Although the undersigned called Ms. Gott to discuss the matter, she was unavailable.   Instead, the undersigned received an email in a tone which was clearly unexpected, unbecoming of the profession, and lacked the civility and common courtesy expected between members of the profession.

**THE ALLEGED SCHEME**

Counsel for the Debtor blatantly suggests that the undersigned's actions were nefarious. With respect to the modification, it is my understanding that Ms. Davis obtained two modifications on behalf of Mr. Davis.  It is also my understanding that funds were paid to Ocwen

and when Mr. Davis learned that the modification would have to be submitted to the Court for approval and that he would have to begin paying it, he indicated that he could not afford it. Thereafter, a second modification was submitted which was also approved.

Finally, neither Mr. Payne nor Ms. Gott has indicated whether the amount of the proposed refund is acceptable to the client.  From the moment counsel for the Debtor approached the issue of a refund; the undersigned has agreed to a refund but counsel has not agreed to the amount of the refund.

## UNAUTHORIZED PRACTICE OF LAW

The unauthorized practice of law is applicable if:

(a) A person commits an offense if, with intent to obtain an economic benefit for himself or herself, the person:

(1) contracts with any person to represent that person with regard to personal causes of action for property damages or personal injury;

(2) advises any person as to the person's rights and the advisability of making claims for personal injuries or property damages;

(3) advises any person as to whether or not to accept an offered sum of money in settlement of claims for personal injuries or property damages;

(4) enters into any contract with another person to represent that person in personal injury or property damage matters on a contingent fee basis with an attempted assignment of a portion of the person's cause of action; or

(5) enters into any contract with a third person which purports to grant the exclusive right to select and retain legal counsel to represent the individual in any legal proceeding.

Counsel for the Debtor has failed to set forth a series of facts to prove elements of the unauthorized practice of law. The undersigned has not obtained or intended to obtain an economic benefit by: (1) contracting to represent that person with regard to a personal cause of action for property damages or personal injury; (2) provided advise as to the Debtor's rights and the advisability of making claims for personal injuries or property damages; (3) advised the Debtor to accept a settlement for personal injuries or property damages; (4) entered into a contract with another person to represent Mr. Davis in a personal injury or property damage matter on a contingent fee basis with an attempted assignment of a portion of the person's cause of action; or; (5) entered into any contract with a third person which purports to grant the exclusive right to select and retain legal counsel to represent the individual in any legal proceeding.

**WHEREFORE**, since debtor has not received an economic benefit, the undersigned requests that this Court deny the Debtors request for sanctions.

Respectfully Submitted,

Dated: January 9, 2020

/s/ Gwendolyn R. Wilds
Federal ID 2384504, VI Bar 461
P.O. Box 11542
Houston, TX 77391
Tel: (832) 272-4969

# CERTIFICATE OF SERVICE

I hereby certify that pursuant to Bankr. R. 2002, this instrument was served by the Clerk of the United States Bankruptcy Court and by fax, email or USPS to all parties requiring notice.

Grace L. Davis
8402 Glenn Elm Drive
Spring, TX 77391

Miriam Goott
mgoot@walkerandpatterson.com

David G Peake
court@peakech13trustee.com

William E. Heitkamp
heitkamp@ch13hou.com

Dated:  January 9, 2020                                      /s/ Gwendolyn R. Wilds
                                                                       Federal ID 2384504, VI Bar 461
                                                                       P.O. Box 11542
                                                                       Houston, TX 77391
                                                                       Tel: (832) 272-4969

8

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON, DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 17-35044-H2-7** |
| **ROBERT DAVIS** | § | |
| | § | |
| **DEBTOR** | § | |

ORDER
(ECF #      )

    **AND NOW THIS**    day of        , 2020 the Debtor's Motion for Sanctions

against Gwendolyn Wilds for the unauthorized practice of law is hereby DENIED.


                                       _____
                                          JUDGE DAVID R. JONES
                                   JUDGE OF THE BANKRUPTCY COURT

Grace Davis
William Heitkamp
David G. Peake
Miriam Goott

1